IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TERRY D. CLAYBORN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-3452 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| WALTER INVESTMENT | ) | |
| MANAGEMENT CORP, DITECH | ) | |
| F/K/A GREEN TREE SERVICING, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Terry D. Clayborn filed this *pro se* action against Defendants Walter Investment Management Corp. and Ditech formally Green Tree Servicing, LLC, alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, the Consumer Financial Protection Act of 2010, and the Emergency Economic Stabilization Act of 2008. Now pending before the Court is Ditech Financial, LLC f/k/a Green Tree Servicing, LLC ("Ditech Financial") and Ditech Holding Corporation f/k/a Walter Investment Management Corp.'s ("Ditech Holding") (collectively "Defendants") motion to dismiss [11] Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). For the reasons explained below, the Court grants Defendants' motion [11]. Plaintiff's complaint is dismissed without prejudice. As explained below, Plaintiff must file a status report by March 29, 2019, that either (1) explains the basis for this Court to exercise diversity jurisdiction over this case or (2) states that she wishes to proceed in state court. Should Plaintiff fail to file the status report by the deadline set above (or any extension of it), the Court will enter final judgment and close the case.

Additionally, though not requested by Plaintiff, the Court construes the "Additional Reply" [22] as a request to file a sur-reply, which the Court grants, as it considered the document in its

resolution of the motion to dismiss. Finally, Plaintiff's motion to defer initial discovery response [23] is denied as moot given this opinion and her filing of a notice of service of mandatory initial discovery [24].

I. Background[1]

In October 2007, National City Mortgage issued a mortgage on a property owned by Plaintiff in Orlando, Florida. [1, ¶¶ 1–3.] When PNC Financial Services Group, Inc. purchased National City Corporation in October 2008, it took ownership of the mortgage and transferred the servicing of the loan to Defendants. [*Id.* ¶ 2.] Like many homeowners during the 2008 financial crisis, Plaintiff struggled to make her mortgage payments and fell behind. [*Id.* ¶ 4.] Plaintiff alleges that this led to long pattern of harassment by Defendants that began as early as 2011 and involved threatening conversations, bullying collection techniques, and other tactics. [*Id.* ¶¶ 4–6.]

Specifically, Plaintiff complains that she has been subjected to constantly shifting demands in her attempt to seek loan modifications from the Defendants to avoid losing the property. [*Id.* ¶ 6.] She also asserts that Defendants have "strung [her] along," "repeatedly requesting documentation that Plaintiff had already provided." [*Id.* ¶ 7.] Plaintiff alleges that Defendants treatment of her has caused her financial harm, including bankruptcy, and mental health issues. [*Id.*] This mistreatment has allegedly continued to the present, as Defendants denied her request for a loan modification in May 2018, roughly two years after she requested it and just months after telling her that she qualified for a modification. [*Id.* ¶ 8.]

---

[1] For purposes of a motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, the Court may not consider facts or other modifications to the complaint contained within a plaintiff's briefing. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (it is "an axiomatic rule that a plaintiff may not amend his complaint in his response brief").

Plaintiff alleges that Defendants' treatment of her and various actions they took during the pendency of her various loan modification requests violated the Defendants' obligations under federal law. [See, e.g., ¶¶ 12–13, 19–20, 23–25.] Consequently, on May 15, 2018, Plaintiff filed this action. [1.] In an effort to serve the Defendants, Plaintiff sent a copy of the complaint and summons by certified mail to a corporate address of Ditech Holding, located in Fort Washington, Pennsylvania. [9.] Shortly thereafter, Defendants filed the instant motion to dismiss [11] under Rules 12(b)(5) and 12(b)(6), asserting that Plaintiff had failed to properly serve them, and that the complaint failed to state a claim. [See generally 12.] Plaintiff filed her response [17] on June 19, 2018, and Defendants filed their reply [21] on July 6, 2018. Plaintiff also filed a sur-reply on July 13, 2018. [22.] The Court now resolves the motion.

## II. Rule 12(b)(5) Motion to Dismiss

Defendants first assert that the Court should dismiss Plaintiff's complaint for insufficient service of process under Rule 12(b)(5) because Plaintiff failed to properly serve the Defendants pursuant to Rule 4(h). See *Mid–Continent Wood Prods., Inc. v. Harris,* 936 F.2d 297, 301 (7th Cir. 1991) (recognizing the necessity of valid service of process and noting that actual notice of litigation does not satisfy the requirements of Rule 4). For the reasons explained below, the Court agrees.

### A. Standard

Once a plaintiff files a lawsuit in federal court, the plaintiff must ensure that each defendant receives a summons and a copy of the complaint against it. Fed. R. Civ. P. 4(b), (c)(1). Unless the plaintiff can demonstrate good cause for being unable to do so, she must accomplish this service of process within 90 days of filing to avoid possible dismissal of the suit. Fed. R. Civ. P. 4(m). The service requirements serve several purposes: they "provide notice to parties, encourage parties and their counsel to diligently pursue their cases, and trigger a district court's ability to

3

exercise jurisdiction over a defendant." *Cardenas v. City of Chi.*, 646 F.3d 1001, 1004–05 (7th Cir. 2011) (citing *Henderson v. United States*, 517 U.S. 654, 672 (1996)) (other citations omitted). Additionally, "a district court may not [generally] exercise personal jurisdiction over a defendant unless the defendant has been properly served with process, and the service requirement is not satisfied merely because the defendant is aware that he has been named in a lawsuit or has received a copy of the summons and the complaint." *United States v. Ligas*, 549 F.3d 497, 500 (7th Cir. 2008).

"A defendant may enforce the service of process requirements through a pretrial motion to dismiss," at which point the plaintiff "bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas*, 646 F.3d at 1004–05. (citing Fed. R. Civ. P. 12(b)(5)) (other citation omitted). If the Court determines that the plaintiff has not met that burden and lacks good cause for not perfecting service, the Court must either dismiss the suit or specify a time within which the plaintiff must serve the defendant. Fed. R. Civ. P. 4(m); *United States v. McLaughlin*, 470 F.3d 698, 700 (7th Cir. 2006). The Court's decision on a Rule 12(b)(5) motion is "inherently discretionary." *Cardenas*, 646 F.3d at 1005 (citing *Ligas*, 549 F.3d at 501). In making its determinations on a Rule 12(b)(5) motion, a court may consider affidavits and other documentary evidence. See *Zausa v. Pellin*, 2017 WL 2311232, at *4 (N.D. Ill. May 26, 2017); *Dumas v. Decker*, 2012 WL 1755674, at *2 (N.D. Ill. May 16, 2012).

**B.     Analysis**

Federal Rule of Civil Procedure 4(h) instructs that a corporation may be served either by delivering a copy of the summons and the complaint to an officer, director, or managing agent of the business or in a manner permitted by the state where the corporation or district court is located. Fed. Rs. Civ. P. 4(h), 4(e)(1). If Plaintiff failed to effectuate service via a permissible method, this

Court lacks personal jurisdiction. See *Fifth Third Bank v. Malone,* 2010 WL 183344, *1 (N.D. Ill. Jan. 20, 2010) (citing *Ligas,* 549 F.3d at 500).

Plaintiff attempted to serve both Defendants by sending a copy of the complaint and summons via certified mail with the U.S. Post Office to Ditech Holding's headquarters in Fort Washington, Pennsylvania. [9.] Because Plaintiff did not serve the summons and complaint on an officer, director, or managing agent of Ditech Holding, the Court must determine (1) whether certified mail is a permitted method of service on a corporation under either Illinois or Pennsylvania law, and (2) if so, whether service of Ditech Holding effectuated service on Ditech Financial.

Under Illinois law, "a private corporation may be served by (1) leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law." 75 ILCS 5/2-204. At least one court to consider the issue has concluded that Illinois state law does not allow service of a summons on a corporation via certified mail. *Ward v. JP Morgan Chase Bank*, 2013 WL 5676478, at *2 (S.D. Fla. Oct. 18, 2013); see also 24 Illinois Jurisprudence: Civil Procedure § 2:20; 13 Ill. Law and Prac. Corporations § 381. Plaintiff has not cited, nor has the Court located, any support for the proposition that a summons and complaint sent by certified mail constitutes one of the "other manner[s] now or hereafter permitted by law" to effectuate service. Consequently, the Court concludes that Plaintiff has not properly served Ditech Holding under Illinois law, and therefore cannot have served Ditech Financial.[2]

---

[2] Even if Plaintiff had properly served Ditech Holding, it would not have properly effectuated service upon Ditech Financial. Ditech Financial appears to be a limited liability company. [1]; [12]. Under Illinois law, service on a limited liability company is governed by section 1–50 of the Limited Liability Company Act. 805 ILCS 180/1–50; *John Isfan Construction, Inc. v. Longwood Towers, LLC*, 2 N.E.3d 510, 517–18 (Ill. App. Ct. 2016). Under section 1–50 of the Limited Liability Company Act, a plaintiff may only serve process upon a limited liability company by serving "the registered agent appointed by the limited liability company or upon the Secretary of State." *Pickens v. Aahmes Temple #132, LLC*, 104 N.E.3d 507, 514 (Ill. App. Ct. 2018) (quoting 805 ILCS 180/1–50(a)). To properly

Similarly, to serve a corporation under Pennsylvania law, a copy must be handed to one of the following persons:

> (1) an executive officer, partner or trustee of the corporation or similar entity, or
> (2) the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity, or
> (3) an agent authorized by the corporation or similar entity in writing to receive service of process for it.

*Pars Tekstil Sanayi Tic, A.S. v. Dynasty Designs, Inc.*, 2008 WL 3559607, at *1–2 (E.D. Pa. Aug. 13, 2008) (citing Pa. R. Civ. P. 424). At least one federal court sitting in Pennsylvania has specifically held that proper service on a corporation cannot be effectuated by sending a complaint and summons through the postal system, including certified mail. *Sampath v. Concurrent Techs. Corp*, 227 F.R.D. 399, 402 (W.D. Pa. 2005) (citing *Staudte v. Abrahams*, 172 F.R.D. 155 (E.D. Pa. 1997) and *Cahill v. Schults*, 643 A.2d 121, 125 (Pa. Super. Ct. 1994)). Thus, Plaintiff's attempt to serve Defendants via certified mail cannot have properly effectuated service on either of the Defendants.[3]

The fact that Clayborn is proceeding *pro se* does not excuse her failure to properly serve process under Rule 4 to Defendants. See e.g., *Smith v. Vericrest Financial et al.,* 2010 WL 5373880 (N.D. Ill. Dec 14, 2010) (dismissing complaint where *pro se* plaintiff attempted to serve defendants personally); *United States v. Mollenhauer Labs., Inc.,* 267 F.2d 260, 262 (7th Cir. 1959) (noting that the liberal construction rule "cannot be utilized as a substitute for the plain legal requirements as to the manner in which service of process may be had"); *Ostler v. Utah*, 2004 WL

---

serve Ditech Financial, Plaintiff would have had to deliver a copy of the summons and complaint to Ditech Financial's registered agent in Illinois: CT Corporation System. [12, at 5.]

[3] Service on a limited liability corporation, such as Ditech Financial, must be effectuated in the same manner as service on a corporation such as Ditech Holding. See, e.g., *Grieb v. JNP Foods, Inc.*, 2016 WL 8716262, at *3 (E.D. Pa. May 13, 2016) (evaluating the effectiveness of service of process on a limited liability company under Pa. R. Civ. P. 424).

1529271 (10th Cir. 2004) ("While we construe the complaints of pro se litigants liberally, 'a pro se litigant is still obligated to follow the requirements of Fed. R. Civ. P. 4.'").

Given that Plaintiff has failed to properly serve Defendants, and it appears Plaintiff has not yet stated a claim as explained in Section III below, the Court grants Defendants' motion under Rule 12(b)(5). Plaintiff's complaint is dismissed without prejudice and with leave to file an amended complaint as explained in Section III below provided that the Court can exercise diversity jurisdiction.[4] Should Plaintiff file an amended complaint, she may wish to avail herself of the William J. Hibbler Pro Se Assistance Program by making an appointment on the 20th Floor of the Dirksen Federal Courthouse.

### III. Rule 12(b)(6) Motion to Dismiss

In the alternative, Defendants also argue that Plaintiff's claim should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted.

#### A. Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause

---

[4] If there is no federal jurisdiction, the Court will enter a dismissal order that will allow Plaintiff to re-file this case in state court within one year. See 735 ILCS 5/13-217.

of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Additionally, courts must construe *pro se* complaints liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Obriecht v. Raemisch*, 517 F.3d 489, 491 n.2 (7th Cir. 2008)).

      **B.**      **Analysis**

Plaintiff's complaint [1] did not explicitly state the cause of action she sought to pursue against Defendants. In their motion to dismiss, Defendants interpreted her complaint as a request for relief under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1, *et. seq.* ("the ICFA"). [12, at 7.] In her response [17] and in an amended civil cover sheet [18], Plaintiff explained that she sought to hold Defendants' accountable for their unfair, deceptive, and abusive business practices under 12 U.S.C. § 5531 and § 5536. [17, at 6]; [18.] Sections 5531 and 5536 both fall within the Consumer Financial Protection Act ("the CFPA"), which was enacted as Title X of the Dodd–Frank Act of 2010, Pub. L. No. 111-203, §§ 1001–1100H, 124 Stat. 1376, 1955–2113 (2010). Additionally, in her sur-reply [22], Plaintiff explicitly claimed to be proceeding under the Emergency Economic Stabilization Act of 2008, Pub. L. 110-343, 122 Stat. 3765 (2008)

("the EESA") (codified at 12 U.S.C. § 5201 *et seq.*) and the ICFA for the first time.[5] [22, at 1–2.] The Court construes Plaintiff to be asserting claims under the ICFA, CFPA, and the EESA and will analyze her claims accordingly.

As an initial matter, Defendants argue that Plaintiff's complaint does not meet even the minimum requirements of Rule 8(a)(2) of a "short and plain statement of the complaint showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rather, Defendants claim this suit arises from Plaintiff's dissatisfaction with her inability to qualify for a loan modification pursuant to Fannie Mae's guidelines. [12, at 7 (citing 1, ¶¶ 10–13, 25).] However, Plaintiff's complaint also includes allegations that detail Defendants' purported mishandling of her attempt to modify her loan. [See generally 1.] Those allegations, combined with Plaintiff's arguments in her response and sur-reply, warrant further analysis to which the Court now turns.[6]

The ICFA is a "regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002). The statute provides redress not only for deceptive business practices, but also for business practices

---

[5] Based on the nature of Plaintiff's allegations in her complaint, and the arguments in her response and sur-reply, the Court assumes that Plaintiff is seeking to state a claim under the Home Affordable Modification Program ("HAMP") a federal program established by the Treasury Department under the EESA which seeks to prevent unnecessary foreclosures by encouraging banks to restructure and refinance certain mortgages in default or in imminent risk of default. See *Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortg. Loan Tr., Series 2003-1*, 787 F. Supp. 2d 747, 750 (N.D. Ill. 2011) (citing *Williams v. Geithner*, 2009 WL 3757380, at *1–3 (D. Minn. Nov. 9, 2009) and summarizing HAMP).

[6] Defendants also assert that most of the claims contained within Plaintiff's complaint are time-barred under the relevant statute of limitations. Because the Court has already dismissed the complaint without prejudice, it declines to address that argument at this time given that the statute of limitations is an affirmative defense that is only resolved on a motion to dismiss if a plaintiff pleads herself out of court. With that said, the Court notes that Defendants are correct that the statute of limitations for claims under the ICFA is three years. *Blankenship v. Pushpin Holdings, LLC*, 157 F. Supp. 3d 788, 792 (N.D. Ill. 2016). Consequently, Plaintiff must be cognizant to ensure that all the events of which she complains occurred within three years of the filing of the instant action, or an exception to that rule applies. See, e.g., *id.* at 795–96 (concluding that the "continuing violation doctrine" applied to plaintiffs' ICFA claims and allowing them to complain of acts committed more than three years before the filing of his suit). The Court offers no opinion on whether such an exception would apply in this case.

that, while not deceptive, are unfair. See *id.* To state a claim under the ICFA, a plaintiff must plead five elements:

> (1) a deceptive act or unfair practice occurred, (2) the defendant intended for the plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception.

*Fogt v. 1-800-Pack-Rat, LLC*, 74 N.E.3d 186, 197 (Ill. App. Ct. 2017) (quoting *Dubey v. Public Storage, Inc.*, 918 N.E.2d 265, 277 (Ill. App. Ct. 2009)).

In determining whether a business practice is unfair, courts consider "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Boyd*, 787 F. Supp. 2d at 751 (quoting *Robinson*, 775 N.E.2d at 961 and citing *FTC v. Sperry & Hutchinson Co.,* 405 U.S. 233, 244 n.5 (1972)). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson,* 775 N.E.2d at 961 (citation omitted); see also *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,* 536 F.3d 663, 669 (7th Cir. 2008). Unfairness under the ICFA "depends on a case-by-case analysis." *Siegel v. Shell Oil Co.,* 612 F.3d 932, 935 (7th Cir. 2010). "Because neither fraud nor mistake is an element of unfair conduct under [the ICFA], a cause of action for unfair practices under the [ICFA] need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Windy City Metal,* 536 F.3d at 670.

Defendant asserts that Plaintiff has not alleged any facts that plausibly allege that Defendant engaged in a deceptive act or unfair practice under either standard. [12, at 7.] A plaintiff may meet the first element of an ICFA claim, *i.e.* an unfair practice, by showing that a challenged

practice "offends public policy."[7] *Robinson,* 775 N.E.2d at 961. A practice may offend public policy if it violates a standard of conduct contained in an existing statute or common law doctrine that typically applies to a such a situation. See *Elder v. Coronet Ins. Co.,* 558 N.E.2d 1312, 1316 (Ill. App. Ct. 1990)); see also *Ekl v. Knecht,* 585 N.E.2d 156, 163 (Ill. App. Ct. 1991) (a court addressing ICFA unfairness claim must consider whether challenged practice "offends public policy as established by statutes, the common law or otherwise, or, in other words, whether it is at least within the penumbra of some established concept of unfairness"); see also *Boyd*, 787 F. Supp. 2d at 752; *ABC Bus. Forms, Inc. v. Pridamor, Inc.,* 2009 WL 4679477, at *1 (N.D. Ill. Dec. 1, 2009).

While this standard is amorphous, courts have explicitly held that a plaintiff may predicate an ICFA unfairness claim on violations of other statutes or regulations, such as the CFPA and EESA, that do not themselves allow for private right of action. See, e.g., *Boyd*, 787 F. Supp. 2d at 752–54 (plaintiff could state a claim under the ICFA for violations of agency directives related to HAMP); *Gainer Bank, N.A. v. Jenkins,* 672 N.E.2d 317, 318–19 (Ill. App. Ct. 1996) (holding that a plaintiff may predicate an ICFA claim on defendant's violation of the Illinois Motor Vehicle Retail Installment Sales Act, which itself does not provide a private right of action); *Ornelas v. Safeway Ins. Co.,* 1988 WL 102232, at *1 (N.D. Ill. Sept. 26, 1988) (same for Illinois Department of Insurance regulation prohibiting insurance companies from subjecting insureds to polygraph examinations); see also *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581–86 (7th Cir. 2012) (holding that "the absence of a private right of action from a federal statute provides no reason to

---

[7] The Court's review of the complaint suggests that Plaintiff primarily takes issue with Defendants' actions she asserts are inconsistent with federal guidelines. Consequently, the Court has analyzed her claims under the unfair practice standard. However, should Plaintiff decide to proceed with a deceptive practice claim, she must plead that claim with particularity, *i.e.* provide the "who, what, when, where, and how" of the alleged deceptive. *CHS Acquisition Corp. v. Watson Coatings, Inc.*, 2018 WL 3970137, at *13 (N.D. Ill. Aug. 20, 2018).

11

dismiss a claim under a state law just because it refers to or incorporates some element of the federal law").

The question is whether Plaintiff has adequately pled that Defendants violated the CFPA or the ESSA and specifically whether Plaintiff has alleged conduct that amounts to an unfair business practice. Although violations of directives contained within or promulgated pursuant to federal statutes can be "a hallmark of unfairness under the ICFA," *Boyd*, 787 F.Supp.2d at 753, Plaintiff appears to have first raised these allegations in her response and sur-reply. See [17], [22]. Consequently, the Court may not consider them in its resolution of the instant motion. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (it is "an axiomatic rule that a plaintiff may not amend his complaint in his response brief").

Although the Court could evaluate the remaining allegations within the current complaint to determine their adequacy, given that the Court has already concluded that Plaintiff has not yet properly served Defendants, the Court dismisses the complaint without prejudice and with leave to file an amended complaint consistent with this opinion.[8]

## IV. Sur-Reply

On July 22, 2018, one week after Defendants filed their reply, Plaintiff filed a memorandum of law entitled "Additional Reply." [21], [22]. Although Plaintiff did not request leave to file a sur-reply, the Court construes that memorandum as a motion for leave to file a sur-

---

[8] As explained above, in addition to her claims under the ICFA, Plaintiff alleges violations of the CFPA and the EESA. Even if the allegations regarding those claims had been contained in her complaint, and not in her response and sur-reply, Plaintiff may not state a claim under the CFPA or EESA because neither statute provides her with a private right of action. See e.g., *Gingras v. Rosette*, 2016 WL 2932163, at *22 (D. Vt. May 18, 2016) (concluding the CFPA does not provide a private right of action); *Beider v. Retrieval Masters Creditors Bureau, Inc.*, 146 F. Supp. 3d 465, 471 (E.D.N.Y. 2015) (same); *Nguyen v. Ridgewood Sav. Bank*, 2015 WL 2354308, at *11 (E.D.N.Y. May 15, 2015) (same); *Melton v. Suntrust Bank*, 780 F. Supp. 2d 458, 459 (E.D. Va. 2011) (concluding the EESA, and specifically HAMP, does not provide a private right of action); *Singh v. Wells Fargo Bank*, 2011 WL 66167, at *7 (E.D. Cal. Jan. 7 2011) (same and collecting similar cases). However, as explained above, Plaintiff is not barred from asserting a state law claim, such as the ICFA, that is predicated in some way on a violation the CFPA or EESA. See *Wigod*, 673 F.3d at 581–86 (7th Cir. 2012).

reply. Having reviewed the proposed sur-reply, the Court grants Plaintiff's motion. *Johnny Blastoff, Inc. v. L.A. Rams,* 188 F.3d 427, 439 (7th Cir. 1999) (whether to grant a motion for leave to file a sur-reply lies within a district court's discretion).

V.   **Subject Matter Jurisdiction**

Although not briefed by the parties, the Court has an ongoing obligation to ensure it has subject matter jurisdiction over the cases before it. See *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented.") As the Court explained above, Plaintiff may not proceed under any of the federal statutes that she purportedly asserted a claim under because they do not provide a private right of action. See note 8 *supra*. And "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); see also 28 U.S.C. § 1367. Thus, the only way that the Court may exercise jurisdiction over Plaintiff's remaining ICFA claim is if Plaintiff may proceed under this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.[9]

Plaintiff must plead facts that establish that this Court has subject matter jurisdiction. See, e.g., *Platinum Supplemental Ins., Inc. v. Guarantee Tr. Life Ins. Co.*, 2018 WL 5631609, at *5 (N.D. Ill. Oct. 31, 2018) (requiring the parties to submit a joint status report establishing their respective citizenship after failing to sufficiently plead it in the complaint). Although Plaintiff asserted in her response that she can proceed against Defendants under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, see [17, at 1–2], her complaint contains no facts

---

[9] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-- (1) citizens of different States." 28 U.S.C §§ 1332(a), 1332(a)(1).

regarding the citizenship of either defendant,[10] nor the amount in controversy.[11] And, as the Court has already explained, Plaintiff may not amend her complaint through the briefing on a motion to dismiss. Thus, given Plaintiff has only a state law claim, and has not alleged facts to support the exercise of this court's diversity jurisdiction under 28 U.S.C. § 1332, the Court's normal practice would be to dismiss the claim without prejudice so that Plaintiff could file her ICFA claim in state court. See, e.g., *Wheeler v. Piazza*, 2018 WL 835353, at *8 (N.D. Ill. Feb. 13, 2018) (dismissing state law claims where the court lacked diversity or any other jurisdiction).

Notwithstanding that general practice, the documents submitted by Defendants with their motion to dismiss suggest that there may be diversity of citizenship in this case. See [12-1, at 2 (stating Ditech Holding is a Maryland corporation with a principal office in Pennsylvania)]; [12-1, at 2 (stating Ditech Financial is a Delaware limited liability corporation with a principal office in Pennsylvania)]. However, the Court cannot yet determine whether it has diversity jurisdiction in this case given that (1) Plaintiff has not pled or provided the Court with any information regarding the citizenship of each member of Ditech Financial LLC and (2) Plaintiff has not provided any allegations regarding the amount in controversy.

Rather than have Plaintiff file an amended complaint and require briefing on the issue of whether this court has subject matter jurisdiction over her claims—given the Court may ultimately

---

[10] A corporation like Ditech Holding is a citizen for the purposes of diversity jurisdiction of the state in which it is incorporated and the state in which it has its principal place of business. See 28 U.S.C. § 1332(c). "[T]he phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). By contrast, the citizenship of a limited liability corporation like Ditech Financial is determined by the citizenship of each of its members. See *Muscarello v. Ogle County Bd. of Com'rs*, 610 F.3d 416, 424 (7th Cir. 2010).

[11] "In a case where the plaintiff seeks money damages, '[t]he amount in controversy is whatever is required to satisfy the plaintiff's demand, in full, on the date the suit begins.'" *Montgomery v. Scialla Assocs., Inc.*, 2016 WL 7116585, at *7 (N.D. Ill. Dec. 7, 2016) (quoting *Fulcrum Fin. Advisors, Ltd. v. BCI Aircraft Leasing, Inc.*, 354 F. Supp. 2d 817, 824 (N.D. Ill. 2005)). "The plaintiff must make 'a good faith claim in excess of $75,000.00 in order to create federal jurisdiction.'" *Id.*

have to dismiss the complaint for lack of jurisdiction—the Court will give Plaintiff until March 29, 2019 to file a status report stating whether she wishes to proceed in federal court or in state court. If Plaintiff desires to proceed in federal court, the status report should contain the relevant information for the Court to determine whether it may exercise diversity jurisdiction—the citizenship of Plaintiff, each Defendant and each member of the Defendant LLC, as well as the amount in controversy—and any supporting documentation. The Court again encourages Plaintiff to make an appointment with the William J. Hibbler Pro Se Assistance Program if she has any questions about this order and will grant an extension if necessary to allow her to make such an appointment.

## VI. Conclusion

For the foregoing reasons, Defendant's motion to dismiss [11] and Plaintiff's motion for leave to file a sur-reply [22] are granted. The Court dismisses Plaintiff's complaint without prejudice. As explained above, Plaintiff must file a status report by March 29, 2019, that explains the basis for this Court to exercise diversity jurisdiction over this case, or states that she wishes to proceed in state court. Should Plaintiff fail to file the status report by the deadline set above (or any extension of it), the Court will enter final judgment dismissing the federal claims with prejudice and the state claims without prejudice and will close the case.

Dated: March 5, 2019

Robert M. Dow, Jr.
United States District Judge